The opinion of the court (Fletcher, J. not sitting in the cause) was delivered at the March term, 1851,
Dewey, J.
This is assumpsit on a contract of guaranty, i he nature and extent of which, and its various limitations, are to be found in the letter of the defendant’s testator, Aaron Brooks, jr., of the 5th of May, 1842, taken in connection with the letter of the plaintiffs of the 26th of March, 1842, proposing the guaranty.
As to the subject of the guaranty, or the debts to which it referred, we are of opinion, that as a guaranty of the future indebtedness of Goddard, it was applicable only to future purchases of merchandise by him. This is the import of the letter of the plaintiffs, in which they propose the guaranty; and the letter of Brooks, although more general as to the future debts, is yet to be taken in connection with the letter of the plaintiffs, to which it was a reply. In the letter of Brooks promising to guarantee the farther debts of Goddard, there is quite sufficient to indicate the nature of this liability as to future debts. It is stated therein as one of the terms of the guaranty, that Brooks should “ receive information, immediately upon the plaintiffs selling him goods, of the amount sold him at each sale, and of the term of credit.” These terms all point to debts arising from the sale of goods to God lard. Such was the subject to which the guaranty applied
As a farther element in this guaranty, and one which has . some bearing upon the other questions raised, there is a provision, that for such guaranty, Brooks should receive two and a half per cent on the sums so guaranteed. The plaintiffs, on the 3d of June, 1842, gave notice to Brooks, that they had credited him two and a half per cent on Goddard’s indebted *48 ness to them, stating the amount at $3491.09, all of which was for sales of merchandise on account; of which $2433.69 was for goods sold prior to March 30tb, 1842; $102.26, for goods sold on the 2d of May, 1842, at six months; and $955.14, for goods sold on the 2d of June, 1842, at six months.
Among other grounds of defence, it was urged, that the guaranty was discharged by reason of certain omissions in the plaintiffs’ statement of other items of indebtedness of Goddard to them, namely; 1st. A small account of $31.12; 2d. Interest that had accrued on the balance stated as due January 5th, 1842, of $1213.60; 3d. A note of hand of Goddard given June 2d, 1842, for $1000. The first of these was an accidental omission, which did not increase the liability of the defendant, and does not affect the guaranty. So of the interest. The omission of the other item of $1000 might be more plausibly urged, as an objection grounded in want of fair dealing; the defendant Brooks expecting to receive his two and a half per cent on the whole amount of indebtedness ; and also on the further ground, that it might be material for Brooks to be fully apprised of Goddard’s entire-indebtedness to the plaintiffs. Such, however, were not the terms of the guaranty, and the plaintiffs were left free to have other dealings with Goddard, not included in the guaranty.
But an objection more relied upon by the defendant is, that the plaintiffs, without the consent of the guarantor, extended the original credit given to Goddard, by taking his notes for the whole debt on further time than that of the credit originally given on the sales of merchandise, and taking such notes after the term of credit on these sales had fully expired. On this point, it appears, that the plaintiffs, on the 3d of January, 1843, took sundry notes of Goddard to cover his whole indebtedness to them, and embracing sums not included in the statement of the 3d of June, 1842, for the. amount of $3950.29, payable at different periods of fifteen days, four, five, six, and seven months, from that date. That this was done without the previous knowledge or consent of the guarantor, is, we think, substantially found by the auditor.
*49 The further inquiry is, whether after this was done, the guarantor, with full knowledge of the fact, assented to and ratified the arrangement 1 This assent is to be shown by the plaintiffs, and if shown at all, it results from the letters of Brooks, and from his conversation with the clerk of the plaintiffs. The letters are appended to the auditor’s report, and from a careful consideration of them, we are of opinion, that they fail to establish any ratification of or assent to the extension of the term of credit to Goddard by taking notes on further time. It appears therefrom that Brooks supposed himself liable to some extent on his guaranty; but they do not show, that he assented to the extension of the credit or the renewal of the notes. To a limited extent he was apprised of the renewal of Goddard’s notes, but whether notes given for the merchandise sold by the plaintiffs to Goddard and included in the notice to Brooks, or other notes, does not appear. Nor does the conversation with the clerk amount to such waiver of a discharge from his liability on the guaranty. It was a casual conversation, cautioning the clerk against further renewals, and remarking that ’ “ an extension of credit would discharge the guarantor.” To what extent, Brooks had knowledge of the renewals and extension is also quite uncertain. It would seem from the letter of the plaintiffs to Brooks of the 23d of May, 1843, that Goddard’s debts were stated at only $ 1800 ; whereas they were in fact double that sum. Upon the whole evidence, we are not satisfied that Brooks ever waived any benefit of a discharge of his liability, by any subsequent assent to the extension of time given to Goddard.
That such an extension of time unconditionally, without any reservation of a right to proceed against the guaraní or, and without leaving the guarantor at liberty, after the expiration of the first term of credit, to pay the debt and proceed against his principal, will ordinarily discharge a surety, is a familiar principle, and will not be contested. That the mere taldng of a promissory note from the debtor, whose debt is guaranteed, of the same amount and payable at the same *50 time as the credit given on the sale, will not discharge a guarantor, is well sustained by the cases cited for the plaintiffs. Babcock v. Bryant, 12 Pick. 133, and Curtis v. Hubbard, 9 Met. 322. It is the taking of a note, after the original credit has expired, on farther time, that operates to discharge the surety.
The only remaining questions, therefore, are, in the first place, whether a guarantor is affected in the like manner as á surety by the taking of such note ; and, if so, secondly, whether there is any thing in this particular guaranty to make it an exception to the general principle. That a guarantor and an ordinary surety are alike affected by such extension of the time of payment, seems to be required by sound principles of law, and has often been held, as in Combe v. Woolf, 8 Bing. 156, which was a guaranty of payment for certain merchandise sold to one Joseph. The guaranty contained no stipulation as to the length of the credit to be given to Joseph ; but the custom was a credit of six months, and then in some instances to take in payment a bill at two months. The plaintiff having given a more extended credit, without the knowledge of the defendant, it was held that the guaranty was thereby discharged. The ground was, that after eight months, the guarantor had a right to inquire whether the debt had been discharged, and if he found it still due to take his measures against the debtor accordingly. In the case of Samuel v. Howarth, 3 Meriv. 272, the action was brought upon the following guaranty : “ We engage to guarantee the payment of any goods you may supply to Mr. Isaac Henry, between the 2d of April, 1814, and the 2d of April, 1815.” Goods were sold on the usual terms of a credit of six months, as to part, and of nine months as to part, payable at the expiration of those terms, respectively, in bills at three months. Instead of enforcing the payment of these bills so accepted, the defendant permitted Henry to renew them in every instance, by giving or accepting other bills at extended periods; and this was done without the knowledge, privity or consent of the surety. It was held that the guarantor was discharged thereby. The reason assigned for this decision is, that the surety is held to *51 be discharged, because the creditor, by so giving time to the principal, puts it out of the power of the surety, to consider 11 whether he will have recourse to his remedy against the principal or not, and because he in fact cannot have the same remedy against the principal, as he would have had under the original contract.”
On the part of the plaintiffs was cited the case of Carr v. Browne, 12 J. B. Moore, 62, in which the view taken is apparently contrary to that which we take in the present case. It was there held, that a guaranty given by the defendant to Joseph Thorpe Baker not exceeding ¿6400, was not discharged by the fact, that a bill of exchange, which had been given by Baker to the plaintiff, was dishonored by him, and that the plaintiff permitted the debtor to renew it. The great question there was, whether the failure of the principal to pay the bill was such a failure as to entitle the surety to a notice of the renewal.
Nor do we perceive any thing in the particular guaranty now before us, that will authorize this extension of credit, and postponement of all liability to pay to a future day. It was a contract of guaranty, embracing, in the first place, debts then due, and secondly, any future sales of merchandise; and as no time of credit was mentioned as to such sales, whatever credit was originally given the defendant might have been responsible for. So, if mere delay had occurred in enforcing the payment, it would have afforded no ground for discharging the guaranty. This guaranty was for a commission of two and a half per cent on the amount of the debt, which must be understood as a commission for securing payment of* the particular debts created by the sale of merchandise. If, some eight months afterwards, the creditor elects to blend the guaranteed debt with other dealings, and to make a new contract, it would seem reasonable, that this new arrange ment should not be embraced within the original gua* ranty.
Looking at the case in al. its aspects, the court are of opinion, upon the entire case stated and submitted to them, that the guarantor was discharged, and that the plaintiffs cannot *52 main tain this action against his legal representative, the pre« sent defendant.

Judgment for the defendant.